**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

|                                              |   |                      |
|----------------------------------------------|---|----------------------|
| **SANDRA ANN RIVES,**                        | ) |                      |
| Plaintiff,                                   | ) |                      |
| v.                                           | ) | CIVIL NO. 3:09CV539  |
| **MICHAEL J. ASTRUE,** Commissioner of Social Security, | ) |             |
| Defendant.                                   | ) |                      |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1] Plaintiff, Sandra Ann Rives, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her applications for Social Security Disability ("DIB") and Supplemental Security Income payments ("SSI"). The Commissioner's final decision is based on a finding by an Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined by the Social Security Act ("the Act") and applicable regulations.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion for summary judgment (docket no. 6) be DENIED; that Defendant's motion for summary

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

judgment (docket no. 10) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed for DIB on February 27, 2007, and for SSI on November 23, 2007, claiming disability due to back problems, high blood pressure, and asthma, with an alleged onset date of February 19, 2007. (R. at 66-75, 98.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2] (R. at 47-51, 53-54.) On June 17, 2008, accompanied by counsel, Plaintiff testified before an ALJ. (R. at 21-44.) On September 4, 2008, the ALJ denied Plaintiff's application, finding that she was not disabled under the Act where, based on her age, education, work experience and residual functional capacity, there are jobs she could perform which exist in significant numbers in the national economy. (R. at 18-20.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 1-3.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

## III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process

3

that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" (SGA).[3] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. Id. If the claimant establishes that she did not engage in SGA, the second step of the analysis requires her to prove that she has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c). In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to her past relevant work[4] based on an assessment of the claimant's residual functional capacity (RFC)[5] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. Id. However, if the claimant cannot perform her past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the

---

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

testimony of the VE be "relevant or helpful." Id. If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

### IV. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of her disability. (R. at 13.) At steps two and three, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease, status post L5-S1 microdiskectomy; right knee degenerative joint disease; hypertension; asthma; and morbid obesity, but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage. (R. at 13-15.) The ALJ next determined that Plaintiff had the RFC to perform sedentary work, except that she was limited to only occasional climbing, crouching, kneeling, or crawling. (R. at 16-18.)

The ALJ then determined at step four of the analysis that Plaintiff could not perform her past relevant work as a sales clerk and a food service worker because of the levels of exertion required in each position. (R. at 16, 18, 31.) At step five, after considering Plaintiff's age, education, work experience and RFC, and after consulting the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, the ALJ nevertheless found that there are other occupations which exist in significant numbers in the national economy that Plaintiff could perform. (R. at 18-19.) Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable such that she was not entitled to benefits. (R. at 19-20.)

Plaintiff moves for a finding that she is entitled to benefits as a matter of law, or in the alternative, she seeks reversal and remand for additional administrative proceedings. (Pl.'s Mot.

6

for Summ. J.)  In support of her position, Plaintiff argues that: (1) the ALJ improperly discounted the opinion of Plaintiff's treating orthopedic surgeon; (2) the ALJ erred by failing to call a VE to testify; and (3) the ALJ improperly concluded that the Plaintiff did not have an impairment that was the medical equivalent of a Listing impairment.  (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 3-11.)  Defendant argues in opposition that the Commissioner's final decision is supported by substantial evidence and application of the correct legal standard such that it should be affirmed.  (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof ("Def.'s Mem.") at 12-22.)

**1.     Plaintiff contends that the ALJ improperly discounted the opinion of Plaintiff's treating orthopedic surgeon.**

Plaintiff contends that the ALJ improperly discounted the opinion of Plaintiff's treating orthopedic surgeon, Dr. Kalluri.  (Pl.'s Mem. at 3-9.)  Specifically, Plaintiff contends that the ALJ failed to provide any specific reasons, supported by references to the record, for his decision to accord Dr. Kalluri's opinion "very little weight."  (Id.)

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluation that have been ordered.  See 20 C.F.R. § 416.912(f).  When the record contains a number of different medical opinions, including those from the Plaintiff's treating physician(s), consultive examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence.  See 20 C.F.R. § 416.927(c)(2).  If, however, the medical opinions are inconsistent internally with

7

each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. § 416.927(c)(2), (d). Under the applicable regulations and case law, a treating physician's opinion must be given controlling weight if it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Craig, 76 F.3d at 590; 20 C.F.R. § 416.927(d)(2); SSR 96-2p. However, the regulations do not require that the ALJ accept opinions from a treating physician in every situation, e.g., when the physician opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the physician's opinion is inconsistent with other evidence, or when it is not otherwise well supported. Jarrells v. Barnhart, No. 7:04-CV-00411, 2005 WL 1000255, at *4 (W.D. Va. Apr. 26, 2005). See 20 C.F.R. § 404.1527(d)(3)-(4), (e).

Dr. Kalluri was one of Plaintiff's treating physicians and the surgeon who performed Plaintiff's microdiskectomy. He treated her from December 2006 to February 2008. (R. at 276-302, 339-341, 347-48.) In an office note, dated February 28, 2008, Dr. Kalluri opined as follows:

> the patient continues to require narcotic medications regularly. She is unable to ambulate for any length of time. She is unable to sit for any length of time. Because of her pain, her concentration is severely limited. I consider this patient completely disabled by her pain.

(R. at 348.)

The ALJ assigned Dr. Kalluri's opinion that Plaintiff was completely disabled by pain "very little weight" because the opinion "was not well supported and was inconsistent with the treatment notes, the opinions of other doctors, and claimant's own statements regarding her daily activities." (R. at 18.) Plaintiff argues that the ALJ's reasons for discrediting the opinion of Dr.

Kalluri were not specific enough and were not supported by the record evidence. (Pl.'s Mem. at 3-9.) More specifically, Plaintiff argues that the ALJ failed to articulate precisely how Dr. Kalluri's opinion was inconsistent with the treatment notes, the opinions of other doctors, and Plaintiff's reported daily activities. (Id.) However, Plaintiff's argument takes the ALJ's conclusory statement out of context and ignores the analysis that precedes said conclusion. Each of the reasons articulated by the ALJ for his decision to accord Dr. Kalluri's opinion less weight is supported by record evidence that is specifically identified by the ALJ in his decision.

For example, the ALJ accorded Dr. Kalluri's opinion less weight because it was not supported by the treatment notes. (R. at 17-18.) As the ALJ expressly stated in his decision, Dr. Kalluri's notes reflect that he found no lower extremity or sensory motor weakness in January 2007, March 2007, or February 2008; that on June 7, 2007, Dr. Kalluri wrote a note stating that Plaintiff would be totally incapacitated, but only until June 15, 2007 following her surgery[6]; and that on January 11, 2008, Plaintiff reported to Dr. Kalluri that Ibuprofen helped her back pain. (R. at 17, 288, 295, 299, 347, 348.)

Additionally, the ALJ accorded Dr. Kalluri's opinion "very little weight" for the further reason that it was inconsistent with the opinions of other doctors. (R. at 17-18.) The ALJ specifically addressed the other opinion evidence in the record, which consisted of the opinions of two state agency medical and psychological consultants.[7] (R. at 18, 262-75.) The state

---

[6] Plaintiff argues that the ALJ misread Dr. Kalluri's June 7, 2007 note. The ALJ summarized this note, stating "Dr. Kalluri wrote a note stating that the claimant could return to work beginning on July 15, 2007." (R. at 17.) Dr. Kalluri's note states that Plaintiff would be totally incapacitated until July 15, 2007. The ALJ's interpretation of Dr. Kalluri's note was a fair interpretation of the note.

[7] Plaintiff asserts that the state agency physicians are "mere 'paperwork' doctors" and that "they did their paperwork evaluations on July 5, 2007 (R 268) and September 5, 2007 (R 275) -- months before Dr. Kalluri wrote his office note dated February 28, 2008 (R 348), stating his opinion that pain debilitated Ms.

9

agency physicians opined that Plaintiff would be able to lift and carry ten pounds, stand and walk for at least two hours, and sit for six hours, and that she had no restrictions in her ability push or pull. (R. at 262-75.) The ALJ assigned the state agency physicians' opinions significant weight because their opinions were consistent with the medical evidence. (R. at 18.)

Furthermore, the ALJ assigned Dr. Kalluri's opinion less weight for the additional reason that it was inconsistent with Plaintiff's statements about her daily activities. (R. at 17-18.) As the ALJ expressly noted, the Plaintiff's written statements of her daily activities reflect that she socialized with others on a daily basis; she had no problems with memory, completing tasks, understanding, following instructions, or using her hands; she cooked for her family, cleaned her house, and washed clothing without assistance; she watched television for up to four hours per day and read every day; and she had a driver's license and drove ten miles per month. (R. at 17-18, 106-113, 139-146.)

Moreover, the ALJ rejected the opinion of Dr. Kalluri to the extent that he opined on an issue reserved for the Commissioner, namely, the ultimate determination of whether or not the Plaintiff is disabled. (R. at 18.) The regulations do not require that the ALJ accept opinions

---

Rives." (Pl.'s Mem. at 5.) However, the Regulations treat state agency medical consultants as "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(f)(2). The ALJ was therefore required to consider their opinions to the extent that they were not inconsistent with record evidence. Id. Additionally, if the Court were to accept Plaintiff's argument that the ALJ must reject an agency physician's opinion merely because new evidence was added to the record after the physician's review, a non-examining source's opinion would have to be continuously updated every time a claimant provides new evidence. If so, a claimant could always add additional evidence to the record and then offer the argument that an ALJ did not assign appropriate weight to the non-examining source who, of course, did not have the opportunity to review the new evidence. Even with additional medical evidence being added to a record after such opinions are offered, the ALJ is nevertheless obliged to factor all of the evidence into his decisional process when he is analyzing a non-examining source opinion. The ALJ considered Dr. Kalluri's opinion that Plaintiff was completely disabled, and, therefore, did not rely solely on the state agency opinions without regard to evidence admitted to the record after those opinions were given.

from a treating physician when the physician opines on the issue of whether the claimant is disabled for purposes of employment. See SSR 96-5p.

Based upon the foregoing, the Court recommends a finding that the ALJ's decision regarding the opinions of Dr. Kalluri is supported by substantial record evidence and application of the correct legal standard.

**2.      Plaintiff contends that the ALJ erred by failing to call a VE to testify.**

Plaintiff also contends that the ALJ should have utilized a VE during Plaintiff's hearing. (Pl.'s Mem. at 9-10.)  Specifically, Plaintiff argues that she suffered from drowsiness as a result of her prescription medication, and, therefore, she could not operate machinery. (Id.) Additionally, Plaintiff notes that Dr. Kalluri had opined that her concentration was severely limited due to her pain. (Id.)  Plaintiff contends that these limitations (drowsiness and an inability to concentrate) would so erode the occupational base for sedentary work that the ALJ was required to call a VE and should not have simply applied the Medical Vocational Guidelines to determine that Plaintiff was not disabled. (Id.)

Once an ALJ determines a claimant's RFC, he may use the Medical Vocational Guidelines ("Grids") to determine the claimant's level of disability and potential for employment. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989).  The Grids catagorize jobs by their physical-exertion requirements,[8] namely, sedentary,[9] light,[10] medium, heavy, and very

---

[8] A claimant's exertional limitations determines the proper exertional level for the claimant's situation. See SSR 83-10. An exertional limitation is an impairment-caused limitation which affects one's capability to perform an exertional activity (strength activity) such as sitting, standing, walking, lifting, carrying pushing, and pulling. SSR 83-10.

[9] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. . . . Jobs are sedentary if walking and

11

heavy. See SSR 83-10. There are numbered tables for the sedentary, light, and medium level (tables 1, 2, and 3, respectively), and a specific rule for the heavy and very heavy levels (Rule 204.00). SSR 83-10; 20 C.F.R. Pt. 404, Subpt. P, App. 2. Based on the claimant's RFC, the ALJ must first determine which table to apply, i.e., if the claimant's RFC limits her to a sedentary exertional level, then Table No. 1 is the appropriate table. Next, based on the claimant's age, education, and previous work experience, the rule directs a finding of "disabled" or "not disabled."

Utilization of the Grids is predicated on the claimant suffering from exertional limitations, and the Grids are not applicable if the claimant suffers solely from nonexertional impairments. 20 C.F.R. § 404.1569a; see 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1, § 200.01(e)(1) ("The rules do not direct factual conclusions of disabled or not disabled for individuals with solely nonexertional types of impairments."). The reason for this rule is that nonexertional limitations may limit a claimant's ability to perform a full range of unskilled occupations at a given exertional level. Thus, where a claimant suffers only exertional limitations, the ALJ must consult the Grids to determine eligibility for benefits. See Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989); Cooper v. Sullivan, 880 F.2d 1152, 1155 (9th Cir. 1989). At the same time, if a claimant suffers from both exertional and nonexertional limitations, then the ALJ must consult the Grids first to determine whether a rule directs a

---

standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

[10] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. . . . A job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

12

finding of disabled based on the strength requirement alone. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1, § 200.01(e)(2). If the claimant is found to be disabled on the strength requirement alone (i.e., a claimant is limited to light work and meets the other categories in rule 202.01), then there is no need to examine the effects of the nonexertional limitations. However, if a rule directs a finding of "not disabled" based on the strength requirement (i.e., the claimant is limited to light work and meets one of the categories in rule 202.10), then the ALJ cannot utilize the Grids; instead, a VE must be utilized to take into account the effects of the claimant's nonexertional and exertional limitations and the claimant's RFC to determine whether there are jobs existing in significant numbers in the national economy that the claimant can perform. Walker, 889 F.2d 49-50.

It is important to note, however, that "not every nonexertional limitation or malady rises to the level of a nonexertional impairment, so as to preclude reliance on the grids." Walker, 889 F.2d at 49 (citing Grant v. Schweiker, 699 F.2d 189 (4th Cir. 1983)). The ALJ must inquire whether the nonexertional condition affects the claimant's RFC to perform work of which the claimant is exertionally capable. Id.

Thus, if the Plaintiff suffered from nonexertional limitations such as drowsiness and an inability to concentrate, and if those nonexertional limitations arose to the level of a nonexertional impairment, then the ALJ would have been required to utilize a VE at the Plaintiff's hearing. However, there is insufficient evidence in the record here to support a finding that Plaintiff suffered from either condition or that, if she did, they arose to the level of a nonexertional impairment. Specifically, there is no evidence in the record to substantiate Plaintiff's assertion that she suffered from drowsiness, aside from Plaintiff's hearing testimony,

13

which the ALJ found to be lacking in credibility. (R. at 16-17, 37.) Similarly, there is no evidence in the record of Plaintiff's alleged inability to concentrate due to pain, aside from the opinion of Dr. Kalluri, to which the ALJ assigned very little weight. (R. at 18, 348.) Given the lack of evidence to support Plaintiff's allegations that she suffered from drowsiness and an inability to concentrate, the ALJ was not required to include such limitations in his RFC determination. See 20 C.F.R. §§ 404.1545, 416.945; Walker, 889 F.2d at 50-51. The ALJ included all of the limitations established by the record evidence in Plaintiff's RFC and he considered them in determining that the Plaintiff could perform sedentary work with minimal additional limitations that would have little or no effect on the occupational base. Therefore, the ALJ properly relied on the Grids to determine that Plaintiff was not disabled, and he was not required to utilize a VE.

Plaintiff additionally argues that the ALJ failed to analyze the Plaintiff's allegations of drowsiness and an inability to concentrate, and therefore, that a post hoc rationalization for the ALJ's refusal to call a VE is impermissible. Plaintiff is correct that the Court may not consider an after-the-fact rationalization for the ALJ's decision. See SEC v. Chenery Corp., 332 U.S. 194, 196 (1947) (in reviewing a determination that an administrative agency has the sole authorization to make, the reviewing court "must judge the propriety of such action solely by the grounds invoked by the agency."); Rickards v. Chater, No. 94-35913, 1996 U.S. App. Lexis 4684, at *4 (9th Cir. Feb. 29, 1996). However, the Court's analysis that the ALJ did not err in declining to call a VE is not a post hoc consideration because there was no occasion for the ALJ to consider whether Plaintiff's alleged drowsiness or alleged inability to concentrate would erode the occupational base. The ALJ did not need to consider whether Plaintiff's alleged drowsiness

14

or alleged inability to concentrate would erode the occupational base because Plaintiff failed to sufficiently establish that those alleged limitations should be a part of her RFC.

Rather, the ALJ considered the evidence of Plaintiff's alleged drowsiness and difficulty with concentration at the appropriate stage of his analysis; that is, he considered the evidence of each condition and concluded that it lacked reliability. The ALJ expressly noted the Plaintiff's testimony that her medications made her drowsy, as well as her testimony that she slept seven hours every night and sometimes took short naps, but he found that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible. (R. at 16-17.) Therefore, he was not required to include drowsiness in his RFC determination. Likewise, he considered the opinion testimony of Dr. Kalluri that Plaintiff would be unable to concentrate because of the severity of her pain, but assigned it very little weight. (R. at 17-18.) It was, therefore, not necessary for the ALJ to include an inability to concentrate caused by pain in his RFC determination. Because drowsiness and difficulty with concentration were not a part of the RFC, the ALJ did not need to consider whether or not such limitations would sufficiently erode the occupational base of sedentary work such that a VE would be necessary. Therefore, the Court's conclusion that the ALJ did not err by declining to call a VE is not the result of a post hoc rationalization.

Based upon the foregoing, the Court recommends a finding that the ALJ properly relied on the Grids to determine that Plaintiff was not disabled, and he was not required to utilize a VE in rendering that determination.

**3. Plaintiff contends that the ALJ improperly concluded that the Plaintiff did not have an impairment that was the medical equivalent of a Listing impairment.**

Finally, Plaintiff contends that the ALJ erred in concluding that the Plaintiff's herniated

15

disc of the lumbar spine failed to meet the criteria of Listing section 1.04. (Pl.'s Mem. at 10-11.) The ALJ so concluded because there was no evidence of compromise of a nerve root or the spinal cord. (R. at 15.) Nor was there any evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, or motor loss accompanied by sensory or reflex loss or a positive straight leg raising test. (R. at 15.) Nor did the plaintiff have lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in an inability to ambulate effectively. (R. at 15.)

An impairment meets or medically equals Listing 1.04 if the impairment is a disorder of the spine that results in compromise of the nerve root or the spinal cord with:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
> or
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
> or
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04. For an impairment to meet or medically equal a listing, the impairment must satisfy each and everyone one of the elements of the Listing. See 20 C.F.R. §§ 404.1520(d); 404.1525(d).

Plaintiff asserts that the ALJ erred to the extent that he found that Plaintiff did not suffer

from compromise of a nerve root or the spinal cord. (Pl.'s Mem. at 10-11.) In support of her position, Plaintiff relies on a report of a June 22, 2007 MRI that documented disk extrusion at L5-S1 that "indents the right S1-II nerve root as it crosses that level." (Id.; R. at 279.) The ALJ considered the report, noting that Dr. Bosworth, who read the MRI and wrote the report, concluded that Plaintiff had degenerative disc disease of the L5-S1 with disc bulging and possible scar tissue. (R. at 14.) The ALJ did not otherwise note the L5-S1 disc extrusion. (R. at 14.)

It is not clear to the Court whether the report of the MRI indicates a compromise of a nerve root that meets the first requirement of Listing 1.04. However, the Court need not reach a conclusion as to whether the ALJ improperly concluded that Plaintiff had no nerve root compromise because even if the ALJ did so err, Plaintiff must demonstrate that her impairment also satisfies all of the other elements of the Listing, and she has not done so. See 20 C.F.R. §§ 404.1520(d) and 404.1525(d). Notably, the ALJ's analysis did not end with the conclusion that Plaintiff did not suffer from compromise of a nerve root or the spinal cord; rather, he continued to evaluate each of the other requirements of Listing 1.04, and concluded that Plaintiff satisfied none of them. (R. at 15.) Plaintiff does not argue that the ALJ improperly evaluated the remaining requirements of the Listing. Because there is insufficient evidence in the record to demonstrate that the Plaintiff's impairments meet <u>all</u> of the requirements of Listing 1.04, any error that the ALJ may have made in concluding there was no nerve root compromise is harmless.

Plaintiff further argues that the ALJ "was not qualified to supply a medical opinion as to the absence of the medical equivalent of a 1.04 Listing impairment." (Pl.'s Reply at 4-5.) While

17

it is true that an ALJ is not qualified to offer a "medical opinion," the evaluation of whether the requirements of a Listing are satisfied by the evidence of record is not a "medical opinion" and is a part of an ALJ's disability determination.  See 20 C.F.R. § 404.1526(e) ("For cases at the Administrative Law Judge or Appeals Council level, the responsibility for deciding medical equivalence [to a Listing] rests with the Administrative Law Judge or Appeals Council.").

Accordingly, the Court recommends a finding that the ALJ's conclusion that the Plaintiff's impairment does not meet all of the requirements of Listing 1.04 is supported by substantial evidence and application of the correct legal standard, and that if any error was made, that error was harmless.

## V.  CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket no. 6) be DENIED; that Defendant's motion for summary judgment (docket no. 10) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Henry E. Hudson and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted**

**by the District Judge except upon grounds of plain error.**

                                            /s/
                                  DENNIS W. DOHNAL
                                  UNITED STATES MAGISTRATE JUDGE

Date: April 12, 2010
Richmond, Virginia